HHN

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JESUS MARTINEZ, ) | |
| ) | |
| Plaintiff, ) | Case No. 07 CV 4525 |
| ) | |
| v. ) | Judge John W. Darrah |
| ) | |
| PROVENA HOSPITALS d/b/a/ ) | |
| SAINT JOSEPH HOSPITAL, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Jesus Martinez ("Martinez" or "Plaintiff"), brings this action against Defendant Provena Hospitals d/b/a Saint Joseph Hospital ("PSJH") for violations of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621-634 *et seq.* ("ADEA"), the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (the "ADA"), the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, and state law. PSJH moves for summary judgment on all of Plaintiff's claims. (Docket No. 22.) For the reasons stated below, PSJH's Motion for Summary Judgment is granted.

## LEGAL STANDARD

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in the non-moving party's favor. *Gillis v. Litscher*, 468 F.3d 488,

1

492 (7th Cir. 2006). The moving party has the initial burden to show that the evidence is insufficient to establish a material element of the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If the moving party meets this burden, the non-moving party cannot rest on conclusory pleadings but must "set forth specific facts in affidavits or otherwise to show that there is a genuine issue of material fact that must be decided at trial." *Colan v. Cutler-Hammer, Inc.*, 812 F.2d 357, 361 (7th Cir. 1987). That is, the non-moving party must "present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial." *Robin v. Espo Eng. Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000). If the evidence supporting the non-moving party's claim is insufficient for a reasonable jury to return a verdict in its favor, the court will grant summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## BACKGROUND

The Court derives the following background facts from the parties' filings of record, including their filings required under Local Rule 56.1.[1] Where the parties

---

[1] Local Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the party contends there is no genuine issue for trial." *Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004). Local Rule 56.1(b)(3) requires the non-moving party to admit or deny every factual statement proffered by the moving party and to concisely designate any material facts that establish a genuine dispute for trial. *See Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005). A litigant's failure to respond to a Rule 56.1 statement results in the court's admitting the uncontroverted statement as true. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006).

2

disagree over relevant facts, the parties' competing versions are either noted and/or are addressed in the pertinent analysis section below.

Martinez is a former employee of PSJH. (Plaintiff's Response to Defendant's Statement of Uncontested Material Facts ("PR"), ¶ 1.)[2] Martinez began working for PSJH in 1974. From August 1985 until his termination in October 2005, Martinez worked as a stationary engineer in PSJH's Facilities Department. (PR, ¶ 5.) As a stationary engineer, Martinez, among others, was responsible for maintaining and operating all equipment essential to the hospital environment. (PR, ¶ 6.) Martinez's job duties included performing preventative maintenance on heating and air conditioning equipment. (PR, ¶ 7.)

According to PSJH, in October 2001, Martinez began to experience job performance problems, which occurred on again/off again for several years thereafter. There is no contention by PSJH that Plaintiff experienced performance problems prior to 2001. In October 29, 2001, Martinez received a written warning for failing to complete two assigned work orders, despite the fact that Martinez's supervisor, MarioTorres, had repeatedly asked him to complete the assigned tasks. (PR, ¶ 12.) Martinez was given 30 days to complete the assigned tasks, and he ultimately did so. (PR, ¶ 12.)

In January 2002, Martinez received another "final written warning" for allegedly failing to finish filling up the chilled water systems during his shift. (PR, ¶ 12.) The

---

[2] Citations to the parties' statements of fact will be as follows: PSJH's statement of uncontested facts will be referred to as "DF"; Plaintiff's response as "PR"; Plaintiff's statement of additional facts as "PAF"; and Defendant's response to Plaintiff's additional facts as "DR."

3

engineer who worked on the shift after Martinez, Roger Goldbach, informed Torres that Martinez had not completed filling the systems and that the pumps were running dry, causing potential damage. (PR, ¶ 13.) Martinez admits that he received a written warning for failing to perform this work, but he denies that he failed to perform it. (PR, ¶ 13.) With respect to this incident, Torres asked Martinez how his shift had gone, and Martinez responded that he was "very busy" and stated that "he was tired of his co-workers and supervisors' attitude of asking him questions." (PR, ¶ 14.) Martinez acknowledges he made the statements but contends he did so as a result of Torres's "harassing" him in an attempt to provoke him into making a negative statement about his employment. (PR, ¶ 14.)

PSJH perceived additional performance issues with Martinez's work in 2002. Specifically, PSJH contends Martinez had been assigned to perform preventative maintenance on medical air compressors in January and April 2002, and Martinez completed work orders indicating that he had spent a significant amount of time performing maintenance on this equipment. (PR, ¶ 17.) However, upon inspecting the medical air compressors, Torres determined that the preventative maintenance had not been performed. Torres directed Martinez to perform the proper preventative maintenance on or about May 1, 2002. According to PSJH, Martinez again claimed to have performed the preventative maintenance, but Torres's subsequent inspection revealed that the work was still not complete. (PR, ¶ 18.) Martinez does not dispute that he was assigned this work or that he was reprimanded for failing to perform it; however, he again denies that he failed to perform the work.

On or about May 2, 2002, Martinez was placed on a 60-day performance- improvement plan based upon poor performance and failure to perform preventative maintenance. Martinez was reassigned to the day shift and received additional training on topics that included preventative maintenance. Martinez completed the retraining program and was released from the performance-improvement plan in July 2002. (PR, ¶¶ 19, 20.)

In September 2002, Martinez received a performance evaluation, indicating that he did not meet expectations. As a result, he was placed on a 90-day performance-improvement plan. He was advised that he needed to improve in several areas, including improving quality in completing preventative maintenance, improving communication regarding equipment, completing work orders and preventative maintenance on time, repairing breakdowns found during rounds, understanding the scope of his position and improving his knowledge about pumps. (PR, ¶ 21.) In March 2003, Martinez was released from this performance-improvement plan, and it was noted that his performance had improved. (PR, ¶ 22.)

Torres counseled Martinez again for failing to complete several assignments in July 2003. (PR, ¶ 23.) Torres warned Martinez that his continued decline in performance would be reflected in his annual performance evaluation. Martinez responded that he did not care about his next evaluation. Martinez does not deny that he was counseled for failing to complete assignments or stated that he did not care about his evaluation. Again, he asserts that he made the statement as a result of "verbal provocation" from Torres, and he denies that he failed to complete the assignments.

According to PSJH, Martinez's performance subsequently improved, and he received performance evaluations in 2003 and 2004, indicating that he met expectations. (PR, ¶ 24.) Martinez was not satisfied with his 2004 evaluation score; he told Torres he did not need his job with PSJH anymore because he had already paid for his daughter's education. Martinez claims this statement, too, was made as a result of "verbal provocation" from Torres. (PR, ¶ 25.) Martinez's performance from 2004 through September 2005 generally met expectations, although Torres noted in Martinez's 2005 evaluation that Martinez needed improvement in keeping his coworkers and supervisor apprised of the status of his work orders. (PR, ¶ 26.)

Martinez was terminated from his employment at PSJH on October 14, 2005, as a result of his performance relating to an assignment to perform preventative maintenance work on a supply fan. On September 1, 2005, Torres assigned Martinez to perform quarterly preventative maintenance on an air handler located above one of the hospital's operating rooms. (PR, ¶ 27.) Part of the preventative maintenance work assigned was to inspect the air handler and look for excess water. (PAF, ¶ 13.) Pursuant to departmental policy, Martinez was responsible for completing the preventative maintenance by the end of the month. Martinez did not complete the work within that time period. On October 12, 2005, Martinez completed a preventative maintenance report, indicating that all the quarterly preventative maintenance tasks, including sweeping the supply fan chambers, had been completed. (Martinez Dep., Ex. 8.) The report also stated that the status of the air handler was "good." (Martinez Dep., Ex. 8.)

After Martinez left work on October 12, 2005, Torres was contacted around midnight and informed that the air handler had malfunctioned and was leaking water into the operating room. Torres immediately responded and spent the rest of the night and early morning cleaning the leak. (PR, ¶ 31.)

On October 13, 2005, Martinez's supervisors met with him regarding his work on the air handler. Plaintiff testified that he performed some of the preventative maintenance work assigned to him. Plaintiff admitted that he did not perform all of the work on the preventative maintenance report. In particular, he admitted that he did not "sweep the floor" and that he checked the chambers very quickly because he was in a hurry. (Martinez Dep., 76-78.) Martinez testified that his plan was to come back and complete all the required work the following day. Torres found that Martinez did not properly inspect the supply fan, resulting in the failure to detect a malfunction in the fan. (Torres Dep. 73.) According to Torres, the malfunction caused water to pool in a pan and drip into the operating room, causing extensive damage to the operating room ceiling. (DF, ¶ 34.) Plaintiff contends he performed all the work that needed to be completed. (PAF, ¶¶ 11, 13, 14.) In addition, he testified that he could not complete the preventative maintenance work before October 12, 2005, because hospital staff would not allow him to stop the fan before then. (PAF, ¶ 12.)

After this October 13, 2005 meeting, Torres and Torres's supervisor, Allen Jensen, met with PSJH Human Resources personnel, Diane Hargreaves and Wendy Davids, to discuss appropriate disciplinary action. (DF, ¶ 43.) They made the decision to terminate Martinez's employment "in light of his admission that he had prepared a

preventative maintenance report to indicate that he had performed work which he admitted that he had not performed, and his resulting failure to identify a malfunction in [the] air handler which caused extensive damage to PSJH property." (DF, ¶ 43.) At Martinez's request, PSJH subsequently changed the effective date of his termination to October 16, 2005, so that Martinez could remain eligible for insurance at the employee rate for the remainder of October. (PR, ¶ 45.) At the time Martinez was terminated, he was 53 years old. (PR, ¶ 48.) Francis Morrissey was hired as stationary engineer to replace Martinez in April 2006. (PR, ¶ 47.) Morrissey was just under 43 years of age when he was hired. (PR, ¶ 47.)

Martinez testified that he informed Torres in late September 2005 that he needed to have left-knee replacement surgery but that no date for the surgery had been set. (Martinez Dep., 133.) Martinez testified that he told Torres on October 5, 2005, that the date for his knee surgery had been set for October 20, 2005, and that he thought it would be a good idea to go to personnel to request leave for the surgery. (Martinez Dep., 133-34.) According to Martinez, Torres responded, "[N]ot right now. We['ll] do it later." (Martinez Dep., 133-34.) Martinez testified that ultimately Torres did not accompany him to personnel to request leave for his surgery because two or three days after this discussion with Torres, Martinez started his vacation. The day Martinez returned was the day he had the problem with the maintenance on the air handler, and he was terminated the next day. (Martinez Dep. 134.) Torres denies that Martinez informed him that he was going to have knee surgery in September and/or October 2005 or asked for leave for surgery in October 2005. (Torres Dep., 62-63.) It is undisputed that Martinez had

8

previously requested leave with respect to treatment for both his right and left knees, including leave in 1997-1998, 2002 and in 2004 and that PSJH had previously granted Martinez all the leave Martinez requested. (PR, ¶ 62.) Martinez testified that he had always first notified Torres verbally when he had taken leave in the past. (PAF, ¶ 9.) PSJH disputes that this was always the case. (DR, ¶ 9.)

After his termination from PSJH, Martinez had surgery on his left knee on October 20, 2005. (PR, ¶ 54.) Martinez did not pursue PSJH's grievance procedure with respect to his termination. (PR, ¶ 46.) On November 14, 2005, Martinez filed a charge of employment discrimination with the EEOC. (Pltf. Complt., ¶ 15, Ex. A.) He timely filed this action after he received a right-to-sue letter from the EEOC.
(Pltf. Complt., ¶ 16, Ex. B.)

Martinez does not dispute that he was subjected to the performance criticisms asserted by PSJH. However, it is Martinez's position that throughout the last few years of his employment at PSJH, he was verbally harassed by his supervisors, Torres and Jensen, and subjected to a more difficult work load than others in an effort to make him resign. (PAF, ¶¶ 32-35.)

Martinez's First Amended Complaint ("Complaint") alleges nine counts: discrimination on the basis of age in violation of the ADEA (Count I); hostile work environment discrimination on the basis of his age in violation of the ADEA (Count II); retaliation and unlawful discharge in retaliation for the exercise of rights under the ADEA (Count III); discrimination and failure to accommodate a disability in violation of the ADA (Count IV); retaliation in violation of the ADA (Count V); hostile work

9

environment discrimination on the basis of a disability in violation of the ADA (Count VI); interference with the exercise of rights under the FMLA (Count VII); retaliation and unlawful retaliation for requesting FMLA leave (Count VIII); and intentional infliction of emotional distress (Count IX).[3]

## ANALYSIS

To establish an ADEA violation, an employee is required to show that his employer took some adverse action, such as a discharge, against him, on the basis of his age. *Steffen v. Meridan Life Ins. Co.*, 859 F.2d 534, 545 (7th Cir. 1989) (citing *Dorsch v. L.B. Foster Co.*, 782 F.2d 1421, 1423-24 (7th Cir. 1986).) An employee may attempt to meet this burden either by presenting direct evidence that age was a determining factor in his discharge or by indirectly establishing that fact through the familiar burden-shifting approach set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973) (*McDonnell Douglas*). Under the indirect burden-shifting approach, the plaintiff bears the burden of making out a *prima facie* case of age discrimination by showing that: (1) he is a member of a protected class; (2) his performance met his employer's legitimate expectations; (3) despite this performance, he was subjected to an adverse employment action; and (4) his employer treated similarly situated employees outside of the protected class more favorably. *Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 696 (7th Cir. 2006) (*Ptasznik*); *Adreani v. First Colonial Bankshares Corp.*, 154 F.3d 389, 394 (7th Cir. 1998)

---

[3] Plaintiff's original complaint also alleged claims of race, national origin, and color discrimination in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981. However, after discovery, Plaintiff amended his complaint to withdraw the claims of race, national origin and color discrimination.

10

(*Adreani*). If the plaintiff succeeds in establishing a *prima facie* case, the burden then shifts to the employer to articulate a "legitimate, nondiscriminatory reason" for the adverse employment action. *Adreani*, 154 F.3d at 394. If the employer makes this showing, the burden shifts back to the plaintiff to show that the employer's asserted legitimate reason is a pretext for discrimination. "The employee may succeed in his demonstration of pretext by offering evidence that the employer's 'ostensible justification' is 'unworthy of credence.'" *Adreani*, 154 F.3d at 395. To accomplish this proof, the employee must point to evidence that the employer's asserted legitimate reason for the adverse employment action was factually baseless, the reason was not the actual motivation for the discharge, or the reason was insufficient to motivate the discharge. *Adreani*, 154 F.3d at 395.

Plaintiff attempts to show age discrimination in this case under the indirect burden-shifting approach. (*See* Pltf. Mem. at 8.) Plaintiff contends the *prima facie* elements of a case of age discrimination are met because it is undisputed that he is over forty and was terminated from his employment. In addition, he contends there are at least triable issues of fact as to the other elements of a *prima facie* case, that he was performing his job satisfactorily and that a younger employee, Enrique Garcia, was treated more favorably than he was. (Pltf. Mem. at 8-9.) In addition, Plaintiff contends PSJH's asserted reason for terminating him, the October 12, 2005 work incident, is not a sufficient legitimate reason to justify his termination but was "clearly a pretextual reason." (Pltf. Mem. at 11.) PSJH contends Plaintiff's evidence is insufficient to make out a *prima facie* case of discrimination and is insufficient to show pretext.

11

It is undisputed that Plaintiff received "meets expectations" performance reviews in 2003, 2004 and 2005. (DR, ¶¶ 26-28.) This is sufficient to show that up until the October 12, 2005 incident, Plaintiff's performance met his employer's legitimate expectations for purposes of establishing the third element of a *prima facie* case. However, Martinez has not come forward with sufficient evidence to show the fourth element of a *prima facie* case, that PSJH treated similarly situated employees outside of the protected class more favorably than he. For this element, Martinez relies on his own assertions that Enrique Garcia was frequently assigned less work and was not subjected to the same criticisms from Torres and Jensen as he was. (PAF, ¶ 32.) However, in the Seventh Circuit, "[i]t is fundamental that to make a comparison of a discrimination plaintiff's treatment to that of [other] employees, the plaintiff must show that the 'comparables' are similarly situated in all respects." *Spath v. Hayes Wheels, Int'l-Indiana, Inc.*, 211 F.3d 392, 397 (7th Cir. 2000). Plaintiff's testimony that Garcia received "less work" and received more favorable treatment than he did is insufficient to show that Garcia was similarly situated to him in "all respects." As the Seventh Circuit stated in *Radue v. Kimberly Clark Corp.*, 219 F.3d 617, 18 (7th Cir. 2000), a plaintiff must show that another employee is similarly situated to another employee in terms of "performance, qualification and conduct," which normally requires a showing that the two employees "dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." Plaintiff has not come forward with such evidence. Indeed, Plaintiff testified that he worked on a

different shift than Garcia and only worked with Garcia for three days. (Martinez Dep., 38-39.) Plaintiff's testimony is insufficient to show that PSJH treated another similar situated employee more favorably than he; therefore, he has failed to establish a *prima facie* case of age discrimination.[4]

Even assuming Plaintiff's evidence was sufficient to establish a *prima facie* case of age discrimination, PSJH has come forward with evidence that it terminated Martinez's employment on October 13, 2005, for a legitimate nondiscriminatory reason: *i.e.*, that Plaintiff falsified a work order on October 12, 2005, indicating that he had done all of the required maintenance work on the air handler, and failed to properly perform the required maintenance work, resulting in extensive water damage to the operating room ceiling. (PSJH at 7.) Thus, in order to survive summary judgment, Martinez must come forward with evidence sufficient to show that PSJH's asserted reason is merely a pretext for illegal age discrimination.

The only evidence Plaintiff points to in his opposition brief to show pretext is evidence that he received "meets expectations" performance reviews in 2003, 2004 and 2005 and that PSJH did not previously treat him as harshly for prior incidents of poor performance. (Pltf. Mem. at 10-11.) Plaintiff contends there is at least a factual issue as to whether PSJH's asserted reason for terminating him is pretextual because: "If [PSJH] was acting consistent with its own protocol, a written warning or a performance plan would have been the proper discipline for Plaintiff." (Pltf. Mem. at 11.) In addition,

---

[4] Furthermore, Plaintiff makes no argument, and points to no evidence, in his opposition brief, showing that he has satisfied the elements of a *prima facie* case of discrimination under the ADA. Therefore, Count IV fails.

13

Plaintiff argues the only differences between his prior performance reprimands and the October 2005 incident was that he was older at the time of the October 2005 incident, and the incident took place after he exercised his rights under the FMLA and the ADA.

Plaintiff's argument does not show pretext. As Defendants point out, it is not the function of the federal courts to "sit as a super-personnel department with authority to review an employer's business decision as to whether someone should be fired or disciplined because of a work-rule violation." *Ptasznik*, 464 F.3d at 697. Rather, the court's inquiry is limited to determining whether a factual dispute exists "as to whether the employer honestly believed the stated, legitimate reasons for the adverse action." *Ptasznik*, 464 F.3d at 697. Accordingly, that PSJH disciplined Plaintiff for prior instances of poor performance with warnings and performance plans but resorted to more severe discipline for the October 2005 incident is irrelevant. It is PSJH's prerogative to determine the appropriate discipline for an employee's poor performance in accordance with its work rules. Accordingly, Plaintiff's own assertion that PSJH should have disciplined him with a written warning or a performance plan is insufficient to show pretext. Plaintiff's opinion does not show that PSJH did not honestly decide to discipline Plaintiff with termination for the more serious performance problem that occurred in October 2005.

Nor is Plaintiff's argument that his termination followed the exercise of rights under the ADA and FMLA sufficient to show pretext. First, Plaintiff has pointed to absolutely no evidence that he exercised statutorily protected rights under the ADA prior

to his termination.[5] The only evidence that exists is Plaintiff's own testimony that he told Torres in late September and/or early October 2005 that he needed to take leave to have knee surgery. (As noted, Torres disputes this testimony.) This testimony, even if true, does not establish that Plaintiff was disabled within the meaning of the ADA or requested an accommodation within the meaning of the statute.[6] The testimony viewed in the light most favorable to Martinez is sufficient to show that Martinez told Torres he needed to request leave under the FMLA. However, there is no dispute that the request for leave was never made to Human Resources. (*See* Martinez Dep. at 134.) Further, there is no dispute that Plaintiff experienced the performance issue on the supply fan *after* he had this discussion with Torres and on the day he returned from vacation. He was terminated the very next day. There is no evidence that any of the other PSJH decisions-makers, besides Torres, were aware, prior to Martinez's termination, of his prior statements to Torres that he needed to seek leave. It is also undisputed that whenever Plaintiff had previously requested leave for his knee conditions, PSJH afforded him all the leave he needed. On these facts, Plaintiff's testimony that he told Torres he needed leave for knee surgery – before he experienced the performance problems with the supply fan and the maintenance report – is insufficient to create a triable issue that PSJH's decision to terminate him for his own conduct of falsifying the maintenance report and failing to

---

[5] Indeed, Plaintiff fails to respond to PSJH's argument on summary judgment that he was not disabled within the meaning of the ADA.

[6] As the Seventh Circuit has recognized, merely showing that the plaintiff has a medical condition is not sufficient to show that the condition satisfies the ADA's disability standard. *See Burnett v. LFW, Inc.*, 472 F.3d 471, 482 (7th Cir. 2006).

15

adequately perform the maintenance duties is a pretext for illegal discrimination. That is, Plaintiff's testimony alone that he told Torres he needed leave is insufficient to support a reasonable finding that PSJH's reason for terminating him was factually baseless, that it did not actually motivate his discharge, or that it was insufficient to motivate the discharge. *Adreani*, 154 F.3d at 395.

For all of the reasons stated, PSJH is entitled to summary judgment on Plaintiff's claim that he was terminated based on his age in violation of the ADEA (Count I).

PSJH is also entitled to summary judgment on Plaintiff's claims of discrimination and failure to accommodate a disability in violation of the ADA (Count IV); interference with the exercise of rights under the FMLA (Count VII); retaliation under the ADEA (Count III); and for "hostile-work" environment discrimination under the ADEA and the ADA (Counts II and VI). As PSJH points out, PSJH moved for summary judgment on all of these claims, arguing that each of the claims is insufficient as a matter of law. (*See* PSJH Mem.) In his opposition brief, Plaintiff makes no argument or response that he has viable claims under the theories alleged in the counts listed above. In his opposition brief, Plaintiff makes arguments against summary judgment *only* as to his claims of age discrimination under the ADEA (Pltf. Mem. at 8-11), retaliation for exercising rights under the ADA and the FMLA (Pltf. Mem. at 5-8), and for intentional infliction of emotional distress under state law (Pltf. Mem. at 11-12). In that Plaintiff makes no argument or showing that he has viable, triable claims under the theories alleged in the counts listed above, Plaintiff has abandoned such claims; and PSJH is entitled to summary judgment as to those counts. *See Bombard v. Fort Wayne Newspapers, Inc.*,

16

92 F.3d 560, 562, n.2 (7th Cir. 1996) (plaintiff abandoned claim under the FMLA after failing to respond to defendant's arguments in motion for summary judgment); *Johnson v. Wal-Mart Stores, Inc.*, Case No. IP-99-0848-C-M/S, 2001 WL 396953, *6 (S.D. Ind. Jan. 17, 2001) (plaintiff abandoned retaliation claim under the ADA by failing to respond to defendant's arguments on summary judgment).[7]

The Court now turns to Plaintiff's claims of retaliation under the ADA and the FMLA, the only remaining federal claims that Plaintiff contends present triable issues. Count V is a claim for retaliation under the ADA; Count VIII is a claim for retaliation under the FMLA.

Retaliatory discharge cases under the ADA and the FMLA are also analyzed under the *McDonnell Douglas* burden-shifting approach. *King v. Preferred Technical Group*, 166 F.3d 887, 891 (7th Cir. 1999) (*King*). To establish a *prima facie* case of retaliation, a plaintiff must show that: (1) he engaged in protected activity; (2) the employer took an adverse employment action against him; and (3) there is a causal link between the employee's protected activity and the adverse action. *King*, 166 F.3d at 892. To demonstrate a "causal link," the employee must show that the employer would not have taken the adverse action but for the employee's protected activity. *King*, 166 F.3d at 892.

---

[7] To the extent Plaintiff may have intended his discussion of pretext on his age discrimination claim to apply to any of these abandoned claims as well, any abandoned claim requiring a showing of pretext would be insufficient to survive summary judgment for the same reasons he failed to show pretext in the age claim.

Upon the establishment of a *prima facie* case, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. The plaintiff, then, must demonstrate that "the proffered reason was not the true reason for the employment decision" and that the employee's participation in the protected activity was, in fact, the real reason for the employment action at issue. At all times throughout this burden-shifting approach, the plaintiff retains the ultimate burden of persuasion. *King*, 166 F.3d at 892.

To support his claims of retaliation, Plaintiff relies on the same evidence he relied on to support his claim of age discrimination under the ADEA, namely, his own deposition testimony that he told Torres he needed leave to have knee surgery eight days before he was terminated. (Pltf. Mem. at 6-8.) Plaintiff's retaliation claims are insufficient to withstand summary judgment for several reasons. First, with respect to his claim of illegal retaliation under the ADA, Plaintiff's *prima facie* case fails because PSJH has pointed to evidence, demonstrating that Plaintiff's knee condition is not a "disability" within the meaning of the ADA; and Plaintiff has made no effort to argue (much less point to evidence demonstrating) that this is even a triable issue. Second, even assuming Plaintiff's alleged statements to Torres constitute protected activity within the meaning of the ADA and the FMLA, as discussed above in connection with Plaintiff's age discrimination claim, PSJH has articulated legitimate, nondiscriminatory reasons for Plaintiff's discharge – Plaintiff's poor performance on a maintenance assignment and his falsifying of a maintenance report. As discussed above, Plaintiff's mere assertion that he told Torres he needed leave for knee surgery prior to his discharge is insufficient to show

that PSJH's asserted reason is a pretext in light of the undisputed facts here that: (1) there is no evidence that any decision-maker other than Torres was aware of Plaintiff's need for leave prior to his termination; (2) PSJH had always previously granted Plaintiff all the leave he requested for his knee problems; and (3) Plaintiff undisputably engaged in conduct on October 12, 2005 (the day before he was terminated), that PSJH found unacceptable. A reasonable jury could not find, on these facts, that Plaintiff's statements to Torres, which were never communicated to Human Resources, were the real reason he was terminated or that PSJH's assertion that he terminated him for his conduct on October 12, 2005 is a pretext. For these reasons, there is no genuine issue of material fact for trial, and PSJH is entitled to summary judgment on Martinez's claims of retaliation under the ADA and FMLA.

This leaves only Plaintiff's state-law claim for intentional infliction of emotional distress. This claim is dismissed without prejudice in light of the absence of the presence of a viable federal claim in the case. *See Kennedy v. Schoenberg, Fisher & Newman, Ltd.*, 140 F.3d 716, 727-28 (7th Cir.1998) ( "[T]he general rule is that, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits.")

## CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment (Docket No. 22) is granted as to Plaintiff's federal claims. Plaintiff's remaining state-law claim is dismissed without prejudice with leave to re-file in state court.

Date: November 12, 2008

JOHN W. DARRAH
United States District Court Judge